UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| THEA C. DOOLEY,<br><br>**Plaintiff,**<br><br>v.<br><br>UNITED FOOD & COMMERCIAL WORKERS INTERNATIONAL PENSION PLAN FOR EMPLOYEES, *et al.*,<br><br>**Defendants.** | Civil Action No. 22-2153 (JEB) |

### MEMORANDUM OPINION

In 1997, Plaintiff Thea C. Dooley began employment as a union representative for United Food & Commercial Workers Local 555 and Local 1439. By virtue of assuming a paid officer position with their parent, the United Food and Commercial Workers International Union, Plaintiff immediately became eligible to enroll in the UFCW International Pension Plan for Employees. For various reasons, however, Dooley did not fill out the requisite enrollment paperwork until 2000 and so was not enrolled in the Plan for the years of 1997, 1998, and 1999.

In 2020 and shortly before leaving her position as union representative, Dooley sought to retroactively obtain credit through the Plan for the years she was eligible but not enrolled in order to boost her retirement benefit. Her request was denied. Relying on provisions in the Employee Retirement Income Security Act of 1974 (ERISA), Plaintiff brought this suit against the Plan and Local 3000 to obtain the right to purchase service credits for those earlier years. Defendants now respectively file a Motion for Judgment on the Pleadings and a Motion to Dismiss. Because ERISA does not entitle Plaintiff to recover benefits that she did not in fact

1

accrue and because her equitable claim for relief is time barred, the Court grants Defendants' Motions.

**I.      Background**

Given the Motions under consideration here, the Court draws the relevant facts from the Amended Complaint and recites them in the light most favorable to Plaintiff. See Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000); Dist. No. 1, Pac. Coast Dist., Marine Engineers Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp., 933 F.3d 751, 760–61 (D.C. Cir. 2019).  The Court also examines the terms of the Plan itself.  See ECF No. 17-1, Exh. 1 (Plan Terms).  Because Plaintiff essentially incorporates these terms into her Amended Complaint, see ECF No. 9 (Am. Compl.), ¶¶ 4, 6, 11, 15–16, 32–33, 38–39, the Court may consider them without converting Defendants' Motions into ones for summary judgment.  See Ward v. D.C. Dep't of Youth Rehab. Servs., 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (explaining that on motion to dismiss, court may consider documents "incorporated by reference in the complaint" or "upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss") (internal quotation marks and citations omitted); Mpoy v. Rhee, 758 F.3d 285, 291 n.1 (D.C. Cir. 2014) (applying same standard to Rule 12(c) motion).

  **A.**      Factual Background

In 1997, Dooley began working as a paid "union representative" for UFCW Local 555 and Local 1439, the predecessor of Defendant Local 3000.  See Am. Compl., ¶¶ 4, 12, 24 (capitalization altered).  She became eligible to enroll in the Plan as soon as she assumed the compensated union-representative position.  See Plan Terms, art. A, §§ 13, 14(a).  The Plan is a multi-employer "employee pension benefit plan" as defined by 29 U.S.C. § 1002(2)(A) and

provides an annual pension benefit based on the number of years a participant is enrolled. See Am. Compl., ¶ 16. In order to enroll in the Plan, eligible employees must "make[] a written application for participation" and must make the "contributions required by the Plan." Id., art. A, § 25 (capitalization altered). Employees have one year after becoming eligible to enroll in the Plan and to make the requisite contributions. Otherwise, the year "shall not count as either vesting service or benefit service." Id., art. J, § 1(a) (capitalization altered). Despite Dooley's eligibility in 1997, the Plan did not send her enrollment paperwork until June 4, 1998. See Am. Compl., ¶ 43. Language in a letter that accompanied the enrollment paperwork caused her to believe that she was already enrolled in the Plan and that completion of the attached forms would result in her disenrollment. Id., ¶¶ 50–53. As a result, she did not complete the forms and ultimately did not enroll in the plan until 2000. See ECF No. 19-1, Att. D (Plan Response to Request to Purchase Additional Service).

After completing 23 years of employment as a union representative, Dooley recently began to make arrangements for her retirement. Seeking to maximize her pension benefits, she requested on June 23, 2020, that the Plan permit her to purchase service credit for the years of 1997, 1998, and 1999. See Am. Compl., ¶¶ 17–18. The Plan denied that request, id., ¶ 21, and upheld the denial after Plaintiff appealed. Id., ¶ 31. In August 2021, Dooley left her position as union representative. Id., ¶ 13.

    B.    Procedural History

Dooley filed her Complaint on July 21, 2022, naming the Plan and Local 3000 as Defendants, and she submitted an Amended Complaint on September 13, 2022. See ECF No. 1 (Compl.); Am. Compl. In her Amended Complaint, the operative pleading here, Plaintiff alleges that Defendants have denied her the opportunity to purchase service credits for the years she was

eligible for but not enrolled in the Plan and that this denial entitles her to relief under 29 U.S.C. § 1132(a)(1)(B), (a)(3).  See Am. Compl., ¶¶ 64, 72, 83, 84.  Local 3000 now moves to dismiss, and the Plan moves for judgment on the pleadings.

## II.     Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted."  Rule 12(c), conversely, enables parties to move for judgment on the pleadings.  In evaluating both motions, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  Sparrow, 216 F.3d at 1113 (citation omitted) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)); see Schuler v. PricewaterhouseCoopers, LLP, 514 F.3d 1365, 1370 (D.C. Cir. 2008) (quoting Doe v. DOJ, 753 F.2d 1092, 1102 (D.C. Cir. 1985)) (articulating same requirement for evaluating Rule 12(c) motions).

Although "'detailed factual allegations'" are not necessary to withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007)).  A court need not accept as true, then, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint.  Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).  For a plaintiff to survive a 12(b)(6) motion, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.

Because Rule 12(c) motions invite courts to render a decision on the merits, moving parties must carry a slightly more onerous burden than when bringing a Rule 12(b)(6) motion. See Murphy v. Dep't of Air Force, 326 F.R.D. 47, 49 (D.D.C. 2018). A judgment on the pleadings is appropriate when the "moving party demonstrates that no material fact is in dispute and that it is entitled to judgment as a matter of law." Liberty Mar. Corp., 933 F.3d at 760 (quoting Peters v. Nat'l R.R. Passenger Corp., 966 F.2d 1483, 1485 (D.C. Cir. 1992)).

### III. Analysis

Plaintiff segments her claims into Count I, which applies only to the Plan, and Count II, which names both the Plan and Local 3000. Count I alleges that the Plan's actions resulted in the denial of "benefits due to [her] under the terms of [her] plan" and invokes the private cause of action provided by 29 U.S.C. § 1132(a)(1)(B). See Am. Compl., ¶¶ 71, 72. Count II alleges that both Defendants breached their fiduciary duties to Dooley by failing to timely provide her with enrollment paperwork and to properly communicate the necessary steps for enrollment in the Plan. For this count, she invokes 29 U.S.C. § 1132(a)(3). See Am. Compl., ¶¶ 80, 82, 84. As relief, Dooley principally requests (1) an accounting of the pension benefits she has lost; and (2) an order allowing her to make catch-up contributions and have her retirement benefits recalculated accordingly. Id. at 12. The Court examines each count in turn.

#### A. Count I

Plaintiff's first count relies on 29 U.S.C. § 1132(a)(1)(B), which empowers a person to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Dooley's Complaint, relying on the first two clauses, seeks to recover "all pension benefits lost to date," Am. Compl. at 12, and "enforce[] her right to make catch-up contributions." Id., ¶ 72 (emphasis

added).  Her Opposition to the Plan's Motion for Judgment on the Pleadings, conversely, invokes the "clarify" clause.  See ECF No. 22 (Pl. MJP Opp.) at 2.  None of these routes is availing.

        1.    *Recover*

Because Plaintiff was not enrolled in the plan for the relevant years, she has not identified "benefits" that she is entitled to "recover."  29 U.S.C. § 1132(a)(1)(B).  More specifically, § 1132(a)(1)(B) enables Dooley to "recover" only benefits actually "due to [her] under the terms of [her] plan," not benefits she could have earned in retrospect.  She nonetheless alleges in her Amended Complaint that "Eligible Employees, engaged in Eligible Employment, are automatically enrolled in the Plan."  Am. Compl., ¶ 53.  But the Plan Terms, which Plaintiff incorporated into her Amended Complaint, belie this contention.  Only a Plan "participant" is eligible for benefits under the Plan.  See Plan Terms, art. B § 1(a).  According to the Plan Terms, an individual does not become a "participant" in the Plan until she "[m]akes a written application for participation upon the form prescribed by the executive committee and is accepted as a participant," and "[m]akes . . . the contributions required by the plan."  Id., art. A, § 25(c), (d) (capitalization altered).  Plaintiff by her own admission did not complete a written application for participation in or contribute to the Plan for the years 1997, 1998, or 1999, and so she was not a "participant" in the Plan for those years.  See Am. Compl., ¶¶ 52, 54–56.  There are thus no Plan benefits from that period for her to recover.

Olivo v. Elky, 646 F. Supp. 2d 95 (D.D.C. 2009), offers persuasive authority on this point.  In Olivo, three plaintiffs sued for benefits under 29 U.S.C. § 1132(a)(1)(B), alleging that they became eligible to enroll in their employer's defined-contribution pension plan years before their employer first notified them of their eligibility.  Id. at 98–99.  Just as under the UFCW Pension Plan, the terms of the Olivo pension plan required that employees enroll in and

6

contribute income to the plan before benefits could be accrued. Id. at 99. Those plaintiffs thus sought "benefits they would have earned had defendants notified them of their eligibility to enroll in the Plan as opposed to benefits earned under the Plan." Id. In granting the defendants' 12(b)(6) motion, the court reasoned that claims for benefits that could have been earned fail because "[r]ecovery under [ERISA] subsection 502(a)(1)(B)[, 29 U.S.C. § 1132(a)(1)(B),] is limited to benefits already accrued under a benefit plan." Id. (citing Eichorn v. AT&T Corp., 484 F.3d 644, 652 (3d Cir. 2007); Tolle v. Carroll Touch, Inc., 977 F.2d 1129, 1134 (7th Cir. 1992)).

Plaintiff attempts to distinguish her case from Olivo by highlighting that, unlike the 401k plan at issue there, her Plan is a defined-benefit plan with benefits that are not yet due. See Pl. MJP Opp. at 8. This is a distinction without a difference. When benefits are due is immaterial to the § 1132 recoverability inquiry if the benefits have not been accrued in the first place. See Olivo, 646 F. Supp. 2d at 99. At bottom, Dooley's claim is best framed not as a contractual one protected by 29 U.S.C. § 1132(a)(1)(B), but rather as an equitable claim for a breach of fiduciary duty by Defendants for allegedly depriving her of the opportunity to enroll in the Plan — a claim that is addressed in the Court's discussion of Count II below.

2. *Enforce*

Just as Plaintiff has not identified "benefits due" that she may "recover," she also fails to identify a "right[] under the terms of the plan" that the Court may "enforce." Am. Compl., ¶ 72; 29 U.S.C. § 1132(a)(1)(B). Dooley establishes that the terms of the Plan enable her to match catch-up payments for enrolled years, but points to no similar provision for unenrolled years. See ECF No. 19-1, Att. C (Plan Permission to Purchase Benefits for Year 2000); Plan Response to Request to Purchase Additional Service (denying request to purchase service prior to Plan

participation). Indeed, the terms of the Plan provide no such mechanism and explicitly state that "the period of eligible employment during which [Plaintiff] declined to make required contributions shall not count" as service eligible for benefits. See Plan Terms, art. J, § 1(a) (capitalization altered). In other words, Plaintiff accrued neither pension benefits for the years of 1997, 1998, or 1999 nor the right to purchase service credit for those years.

Olivo again corroborates this analysis. In dismissing the plaintiffs' § 1132(a)(1)(B) claims, the court explained that "[i]n order to enforce the terms of a plan under [ERISA] Section 502, [29 U.S.C. § 1132,] the participant must first qualify for the benefits provided in that plan." 646 F. Supp. 2d at 99 (quoting Tolle, 977 F.2d at 1134). Absent a benefit due or any other possible mechanism under the Plan Terms here, similarly, there is nothing for this Court to "enforce" under § 1132(a)(1)(B). Plaintiff again attempts to distinguish Olivo by noting that the plan there did not include a buy-back mechanism similar to the one in her Plan. See Pl. MJP Opp. at 8. Although Dooley has alleged that she is permitted to make catch-up payments for enrolled years, the Plan Terms do not provide a mechanism for catch-up payments in unenrolled years. See ECF No. 19-1 (Dooley Decl.), ¶¶ 6–9; Plan Terms, art. J, § 1. The two plans thus share the relevant similarity: neither enabled someone to make catch-up payments for unenrolled years to obtain unaccrued benefits.

       3.     *Clarify*

In her Response to the Plan's Motion for Judgment on the Pleadings, Plaintiff attempts to pivot from the first two clauses of 29 U.S.C. § 1132(a)(1)(B) — "recover[y] [of] benefits due" and "enforce[ment]" of her "rights under the terms of the plan" — to the last clause, which empowers her to "clarify her right to future benefits." Pl. MJP Opp. at 2; 29 U.S.C. § 1132(a)(1)(B). Because this allegation never appears in Plaintiff's Amended Complaint, the

Court need not address it here. See Am. Compl., ¶ 1 (describing claims to "enforce[]" and "recover[]" but not "clarify"). "[I]t is axiomatic that Plaintiffs cannot amend their Complaint via their briefs." Fares v. Smith, 249 F. Supp. 3d 115, 125 (D.D.C. 2017), aff'd, 901 F.3d 315 (D.C. Cir. 2018); see Scott v. Off. of Alexander, 522 F. Supp. 2d 262, 274 (D.D.C. 2007) (citing Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 196 (D.C. Cir. 1992)).

Even were Dooley to amend her Complaint to rely on this clause, there would be no right for the Court to clarify. In Wall v. Reliance Standard Life Insurance, No. 20-2075, 2022 WL 17976806 (D.D.C. Nov. 8, 2022), a magistrate judge in this district rejected a plan participant's suit for a declaration "clarifying his right to future benefits" under an ERISA-governed disability-insurance plan. Id. at *1. Summarizing caselaw from other circuits, the court explained that 29 U.S.C. § 1132(a)(1)(B) provides a cause of action only when "a plaintiff alleges a violation of the terms of a benefits plan" or when there exists "an ambiguity in the plan requiring judicial interpretation." Id. at *15 (quoting Eichorn v. AT&T Corp., 484 F.3d 644, 652 (3d Cir. 2007)) (emphasis omitted). As to a violation, the Court has just explained why none exists here. And Plaintiff identifies no ambiguity in the Plan terms in need of interpretation. Rather she appears to seek an order altering the terms of the Plan. See Am. Compl., ¶ 72. The statute does not "grant a court the power to change the terms of a plan as they previously existed." Wall, 2022 WL 17976806, at *16 (quoting CIGNA Corp. v. Amara, 563 U.S. 421, 435–36 (2011)). Reliance on this clause of the statute thus proves of no more help than the others. The Court accordingly grants judgment to the Plan on Count I.

B.  Count II

Dooley's second count invokes 29 U.S.C. § 1132(a)(3), which empowers participants in ERISA-governed plans to seek equitable relief to redress misconduct by fiduciaries. Here,

9

Plaintiff alleges that Defendants both made misleading statements and neglected to supply her with the proper enrollment forms. In their current Motions, Defendants urge that ERISA's statute of repose, 29 U.S.C. § 1113, bars Plaintiff's claim, regardless of whether they breached their fiduciary duties in either way.

The statute of repose provides:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, <u>after the earlier of</u>—
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113 (emphasis added).

Picking among these three tracks, Plaintiff argues that the three-year window established by § 1113(2) controls this case; as she did not acquire actual knowledge of Defendants' fiduciary breaches until 2020, she contends that her suit is timely. See ECF No. 19 (Pl. MTD Opp.) at 1–2, 5–6; Pl. MJP Opp. at 7. Such a position misreads the statute. Section 1113 provides that it is "the earlier of" the periods to expire that controls, and, if Defendants can establish that the six-year window in § 1113(1) closed before the suit was filed, they prevail.

Looking at the six-year part of the statute, § 1113(1) distinguishes between active fiduciary breaches and those by omission. When a fiduciary <u>actively</u> breaches its duties, the six-year clock begins to tick on "the date of the last action which constituted a part of the breach or violation." 29 U.S.C. § 1113(1). Plaintiff maintains that Defendants actively breached their fiduciary duties by making "materially misleading statements . . . regarding the Plaintiff's

10

enrollment status," which had the effect of depriving her of the opportunity to enroll in the Plan until 2000. See Am. Compl., ¶ 77. The Amended Complaint identifies only one such misleading statement: the language in the June 4, 1998, letter sent to Plaintiff by the Plan causing her to believe she had been automatically enrolled. Id., ¶¶ 50–52. Dooley had until June 4, 2004 — six years from the date of letter — to commence a suit with respect to the misleading statement. As she filed her Complaint in the present case on July 21, 2022, she is way too late.

When a fiduciary breaches its duties by omission, the six-year period begins on "the latest date on which the fiduciary could have cured the breach or violation." 29 U.S.C § 1113(1). As another court in this district has explained, to "cure" means to rectify an omission before its effects are felt, not to remedy it after it has already caused injury. See Olivo, 646 F. Supp. 2d at 102 (citing Librizzi v. Children's Mem'l Med. Ctr., 134 F.3d 1302, 1307 (7th Cir. 1998)). When the omission is a failure to notify someone of her eligibility to enroll in an ERISA-governed pension plan for a certain year, the defendant is last able to prevent injury — and the six-year period begins to run — on the final day that the person could have made an income contribution for that year. Id.

Dooley contends that Defendants breached their fiduciary duties by "fail[ing] to properly supply Plaintiff with enrollment paperwork at the time of [sic] she commenced her employment in 1997." Am. Compl., ¶ 75. Plaintiff alleges that this omission deprived her of enrollment in the Plan for the years of 1997, 1998, and 1999. Id., ¶ 44. Because the terms of the Plan establish a one-year grace period during which eligible employees can enroll for the preceding year, see Plan Terms, art. J, § 1(a), Dooley had until December 31, 2000, to make an income contribution to accrue benefits for 1999. (For prior years, the grace period expired earlier.) Defendants thus had until that same date to cure their failure to supply Dooley with proper enrollment paperwork

11

for that year.  Plaintiff consequently had six years from then to file suit, which she did not do.

In addition to these principal breaches, Dooley alleges that Defendants violated their fiduciary duties in two other ways.  Neither allegation alters the applicability of the statute of repose.  First, Plaintiff contends that "Defendants have failed to keep records consistent with their ERISA duties."  Am. Compl., ¶ 76.  She does not elaborate on the factual basis of this claim.  Her charge appears to be that Defendants violated 29 U.S.C. § 1059 by neglecting to keep records of her first year of employment with Local 1439 as well as by failing to provide her with enrollment paperwork in 1997.  Id., ¶¶ 67–69.  As this alleged fiduciary breach, whether characterized as an active breach or an omission, predates those described above, it suffers the same fate.

Plaintiff also alleges that Defendants "cover[ed] . . . up" the fiduciary breaches or violations they had previously committed.  Id., ¶ 81.  This appears to refer to the June 4, 1998, enrollment letter on the theory that, by inducing Plaintiff to believe that she was already enrolled, the Plan cloaked its earlier fiduciary breach.  The statute of repose does provide that "in the case of fraud or concealment," plaintiffs have six years from the date of discovery of the underlying breach to bring suit.  See 29 U.S.C. § 1113.  At least by the time Dooley actually enrolled in 2000, she knew that her interpretation of the June 1998 letter was incorrect.  Any "cover up" would have been known to her by that 2000 date.  Once again, the statute of repose has long since expired.

## IV.     Conclusion

For these reasons, the Court will grant Defendants' Motion for Judgment on the Pleadings and Motion to Dismiss.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  February 21, 2023

13